IMS, P.C., Appellant,

v.

Aida ALVAREZ, Administrator,
United States Small Business
Administration, Appellee.

No. 96–5073.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 8, 1997.

Decided Sept. 30, 1997.

Russell J. Gaspar argued the cause, for appellant, with whom Paralee White, Washington, DC, was on the briefs.

Glenn P. Harris, Trial Attorney, United States Small Business Administration, Washington, DC, argued the cause, for appellee. Eric H. Holder, Jr., United States Attorney, Washington, DC, at the time the brief was filed, John D. Bates, Washington, DC, R. Craig Lawrence, and Wyneva Johnson, Washington, DC, Assistant United States Attorneys, were on the brief.

Before: EDWARDS, Chief Judge, WALD and GARLAND, Circuit Judges.

WALD, Circuit Judge:

IMS, P.C. ("IMS"), a corporation that provides architectural and engineering services, brought an action in the United States District Court for the District of Columbia to challenge the refusal by the Small Business Administration ("SBA") to revise IMS's participation term in the SBA's section 8(a) program for socially and economically disadvantaged businesses. IMS's dispute with the SBA arose after the passage of the Business Opportunity Development Reform Act of 1988, Pub.L. No. 100–656, 102 Stat. 3853 (codified as amended at 15 U.S.C. § 631 *et seq.* (1994)) ("BODR Act"), which provided for revised participation terms for section 8(a) program participants. Pursuant to the

Act, the SBA notified IMS, a participant in the section 8(a) program, that it would be given a revised program term of nine years from its first section 8(a) contract, which the SBA had determined to be a contract performed by IMS in January 1987. IMS objected to the new term, claiming that its participation term should not be calculated from the date of the January 1987 contract because that contract was brought into the section 8(a) program in violation of an agency regulation precluding acceptance of a contract that was previously the subject of specified forms of solicitation. *See* 13 C.F.R. § 124.301(b)(8) (1987) (subsequently amended and renumbered 13 C.F.R. § 124.309(a) (1997)). The SBA reviewed IMS's claims, concluded that the term had been correctly calculated, and refused IMS's request to revise it.

The district court held that the SBA's decision to include the January 1987 contract in the section 8(a) program did not violate the agency's regulations and dismissed the suit for failing to state a valid claim and, in the alternative, entered summary judgment on behalf of the SBA. *See IMS, P.C. v. Lader,* No. 96–23 (D.D.C. Feb. 12, 1996) (unpublished bench opinion) ("Bench Op."). Because we find that IMS has failed to establish that the SBA violated 13 C.F.R. § 124.301 (1987) when it accepted IMS's contract with the Veterans Administration ("VA") into the section 8(a) program, we affirm the district court's decision to grant the SBA's motion for summary judgment.[1]

## I. BACKGROUND

In December 1985, IMS was accepted into the Small Business Administration's section

---

1. The district court clearly relied on materials outside the pleadings in ruling on the motion to dismiss. *See* Bench Op. ("I don't see any history developed that that really is not what they meant and not how they practiced. That's been argued, but I don't see that in the administrative record. I don't see any interpretations or opinions offered that that's not what it means."). Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the motion to dismiss must therefore be converted into a motion for summary judgment. *See* Fed.R.Civ P. 12(b) ("If, on a motion asserting the defense numbered [12(b)](6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by

the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56...."). For this reason, we will treat the district court's action as only a grant of summary judgment. Our standard of review of a grant of summary judgment under Federal Rule of Civil Procedure 56 is *de novo. See Tao v. Freeh,* 27 F.3d 635, 638 (D.C.Cir.1994) ("Our review of the grant of summary judgment is *de novo,* applying the same standards as the district court.") (citations omitted) (footnote omitted). Summary judgment is appropriate when all the submissions "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56.

8(a) program, which provides "small business concerns owned and controlled by socially and economically disadvantaged individuals" with "contract, financial, technical, and mangement [sic] assistance." *See* 15 U.S.C. § 631(f)(2) (1994) (footnote omitted). The company was initially granted a four-year Fixed Program Participation Term that was to begin on the date of the company's first section 8(a) contract award, subjéct, under the rules then in effect, to limited extension.

In late August 1986, the Engineering Department of the VA Medical Center in Batvia, New York selected IMS to perform a small project. IMS claims, and the SBA offers no evidence to disprove, that IMS was chosen to perform the project after the VA orally solicited several small disadvantaged businesses to submit proposals. The Medical Center was apparently unaware that IMS was a section 8(a) program participant when it selected the company for the project. Accordingly, it was not until after the solicitation and selection of IMS that the project was designated a section 8(a) project.

In November 1988, Congress enacted the BODR Act, which modified the program term for section 8(a) program participants. The final rules implementing the changes required by the Act provided that program participants as of September 1, 1988, would be given a revised program term of "the greater of nine years from the date of the Participant's first contract pursuant to section 8(a) or the Participant's Fixed Program Participation Term (FPPT) expiration date, including any extension thereof, plus 18 months." 13 C.F.R. § 124.110(c) (1989).

In a letter dated December 14, 1988, the SBA informed Iqbal Singh, the president of IMS, that the BODR Act provided IMS with a revised term of participation in the section 8(a) program of nine years from IMS's first contract under the program, which the SBA had determined to be IMS's January 1987 contract with the VA. The letter requested that Mr. Singh sign and return the letter, which he did without objection.

Between 1989 and 1994, IMS contacted the SBA several times in an effort to change its program term. IMS claimed then, as it does now, that the VA contract was not the proper starting point of IMS's section 8(a) program term because the contract was brought into the program only after the VA had engaged in a public solicitation for offers and selected IMS. The SBA maintained in each of its responses that it had found no basis for IMS's contention that the VA contract was inappropriately brought into the program.

In August 1995, IMS submitted additional materials to the SBA in support of its continuing request to change its program term.[2] The SBA's District Counsel, Mollie Gaughan, reviewed the material presented by IMS and concluded that "[t]here is no evidence in the contract file to support the premise that solicitation was previously published" and, therefore, "the program participation date was properly established." Memorandum from Mollie B. Gaughan, District Counsel, to Michael McHale, Deputy Administrator Minority Enterprise Development (Oct. 4, 1995). In response to Ms. Gaughan's memorandum, the SBA's Acting Deputy Associate Administrator, Michael McHale, wrote a memorandum in which he outlined his decision to reject IMS's request to extend its program term. In his memorandum, he noted: "The documentation provided by your office indicates that proper offer acceptance procedure was followed in taking the requirement into the 8(a) program." Memorandum from Michael P. McHale, Acting Deputy Associate Administrator, to Millie B. Gaughan, District Counsel (Oct. 31, 1995). On November 1, 1995, Franklin Sciortino, SBA's District Director for Buffalo, New York, wrote to Mr. Singh at IMS advising him that the Central Office had denied IMS's request for a new participation term expiration date. *See* Letter from Frank J. Sciortino, District Director, to Iqbal Singh, President, IMS, P.C. (Nov. 1, 1995).

In January 1996, IMS filed a complaint seeking judicial review of the SBA's refusal to amend its section 8(a) program term and requesting injunctive relief to prevent the expiration of its term. On February 12,

---

**2.** The materials included affidavits from Mr. Singh and VA employee Janet Kline describing how the VA had conducted the procurement that led to the contract with IMS in 1987.

1996, the district court dismissed the suit for failing to state a valid claim and, in the alternative, entered summary judgment on behalf of the SBA. This appeal ensued.

## II. ANALYSIS

### A. *SBA's Interpretation of the Regulations*

■ IMS claims that SBA's acceptance of the 1987 VA contract into the section 8(a) program violated the SBA's own rules and regulations, and therefore IMS's term expiration dates based upon that contract must be set aside by this court. In particular, IMS alleges that the SBA's decision to accept the contract into the section 8(a) program was contrary to its own regulation precluding acceptance of a contract that was previously the subject of a public solicitation. *See* 13 C.F.R. § 124.301(b)(8) (1987). The district court rejected IMS's claims, noting that "the reading of 13 C.F.R. 124.301 (1987) and the language therein is exclusive language. That is ... the regulation limited public solicitations to those in the form of an invitation to bid, a request for proposal, or a request for a quotation." *See* Bench Op. We agree with the district court that IMS has failed to establish that the SBA's acceptance of the 1987 contract into the section 8(a) program violated 13 C.F.R. § 124.301 (1987).

■ This court has previously noted that it is a "well-settled rule that an agency's failure to follow its own regulations is fatal to the deviant action." *Mine Reclamation Corp. v. Federal Energy Regulatory Comm'n,* 30 F.3d 1519, 1524 (D.C.Cir.1994) (citations omitted) (internal quotation marks omitted); *see Vitarelli v. Seaton,* 359 U.S. 535, 539–40, 79 S.Ct. 968, 972–73, 3 L.Ed.2d 1012 (1959); *Service v. Dulles,* 354 U.S. 363, 372–73, 77 S.Ct. 1152, 1156–58, 1 L.Ed.2d 1403 (1957); *Union of Concerned Scientists v. Atomic Energy Comm'n,* 499 F.2d 1069, 1082 (D.C.Cir.1974). If the SBA failed to follow its own regulations in designating the 1987 VA contract as a section 8(a) program project, this could be fatal to the SBA's

designation of the contract as a section 8(a) project and, therefore, depending on the circumstances, to its decision to establish IMS's participation term on the basis of that contract.[3]

13 C.F.R. § 124.301(b)(8)(i) (1987) was promulgated as a regulation in late 1986. It read:

(8) SBA will not accept for 8(a) award proposed procurements not previously in the section 8(a) program if any of the following circumstances exist:

(i) Public solicitation has already been issued for the procurement as a small business set-aside in the form of an Invitation for Bid (IFB), Request for Proposal (RFP) or a Request for Quotation (RFQ). Providence of a general intent to set aside, such as Procurement Information Notices (PIN's), annual procurement forecasts or past procurements by set aside, is insufficient reasons [sic] to preclude the procurement from 8(a) consideration.

*Id.* IMS contends that this regulation prohibits the SBA from accepting into the section 8(a) program any contract for which a public solicitation has been issued. The company claims that the SBA violated this regulation when it admitted IMS's 1987 contract with the VA into the section 8(a) program because the VA had issued an oral solicitation that was the functional equivalent of a Request for Quotation and had selected IMS to perform the contract before the contract was accepted in the section 8(a) program. For this reason, IMS argues, its participation term in the section 8(a) program cannot be based on this contract.

The SBA presents a more restrictive reading of the regulation. Under its interpretation, which is entitled to substantial deference, *see Lyng v. Payne,* 476 U.S. 926, 939, 106 S.Ct. 2333, 2341, 90 L.Ed.2d 921 (1986) (noting that it is an "established proposition that an agency's construction of its own regulations is entitled to substantial deference") (citations omitted), the transferral of the con-

---

**3.** This court rejects the SBA's contention that under 13 C.F.R. § 124.110(d) (1989) it did not have the statutory authority to revise a program term once it was set even if the contract on which the term was based was granted in viola-

tion of federal regulations. Contrary to the SBA's claim, if the designation of IMS's 1987 contract with the VA as a section 8(a) contract had violated 13 C.F.R. § 124.301(b)(8) (1987), the SBA could have revised IMS's program term.

tract into the 8(a) program would only be invalid if the VA had already issued one of three specific types of public solicitation: an Invitation for Bid, Request for Proposal, or Request for Quotation. In this view, the fact that the VA had issued an oral solicitation that was arguably the functional equivalent of a Request for Quotation is irrelevant. The contract was eligible for inclusion in the SBA's section 8(a) program because the VA had not issued one of the three specified forms of public solicitation.

We find the SBA's interpretation of 13 C.F.R. § 124.301 (1987) to be reasonable. Indeed, it is more reasonable than that offered by IMS.[4] Although the portion of the regulations that applies to the SBA does not itself define the terms "Invitation for Bid," "Request for Proposal," or "Request for Quotation," these terms are used to refer almost exclusively to written documents throughout the federal regulations that govern contracting by negotiation under the federal acquisition regulations system. See, e.g., 48 C.F.R. § 15.402 (1996); 48 C.F.R. § 15.406–1 (1996); 48 C.F.R. § 15.407 (1996); 48 C.F.R. § 15.410 (1996). Tellingly, the portion of the federal regulations that governs acquisitions by the Department of Veterans Affairs does so as well. See, e.g., 48 C.F.R. § 852.210–75 (1996) (requiring that a particular written provision be included in all invitations for bids, requests for proposals, and requests for quotations issued for items that are required to conform to technical industry standards); 48 C.F.R. § 814.201 (1996) (requiring that all invitations for bids be serially numbered at time of issue); see also 38 C.F.R. § 43.36(g)(2) (1996) (referring to requests for proposals and invitations for bids as "procurement documents"). All of this indicates that these terms in the SBA regulations have clear and specific meanings that do not en-

compass oral solicitations of the type allegedly used by the VA in its 1987 procurement.

Because the SBA's more restrictive interpretation of 13 C.F.R. § 124.301 (1987) is consistent with the rest of the federal regulations and with the plain meaning of the regulation, we find it entirely reasonable. Under this interpretation of the regulations, even if the VA issued an oral solicitation to IMS and other small businesses in mid–1986, the SBA did not violate its own regulations when it accepted the contract into the section 8(a) program in early 1987. IMS has therefore failed to establish that its section 8(a) program term is incorrect.

### B. *The Arbitrary and Capricious Claim*

■ In its motion for summary judgment, IMS contended that the SBA's failure to correct IMS's program term was arbitrary, capricious, and contrary to law. The company claimed that the SBA had not examined the relevant data or articulated a satisfactory explanation for its action. It further alleged that there was no rational connection between the facts and the choice SBA made. In response, in its motion to dismiss, or in the alternative, cross motion for summary judgment, the SBA claimed that its refusal to change IMS's term in the section 8(a) program was based upon a rational evaluation of the facts and therefore was not arbitrary, capricious, or contrary to law. It noted that the SBA had notified IMS of its revised program term in 1986 and that IMS had acknowledged that decision without objection. The SBA further claimed that when IMS raised objections to its program term several years later, SBA officials carefully reviewed IMS's factual allegations but concluded that they were inconsistent with specific documents in the SBA's files.[5] The

---

4. Because we find that the SBA's reading of 13 C.F.R. § 124.301 (1987) is more plausible than that offered by IMS, we need not consider whether the manner in which the SBA articulated its interpretation should affect the degree of deference it warrants. See *Huffman v. Western Nuclear Inc.*, 486 U.S. 663, 674 n. 9, 108 S.Ct. 2087, 2093 n. 9, 100 L.Ed.2d 693 (1988); *cf. Securities Indus. Ass'n v. Board of Governors of the Fed. Reserve Sys.*, 468 U.S. 137, 143, 104 S.Ct. 2979, 2983, 82 L.Ed.2d 107 (1984) ("*post hoc* rationalizations by counsel for agency action

are entitled to little deference") (citations omitted); *American Horse Protection Ass'n, Inc. v. Lyng*, 812 F.2d 1, 6 (D.C.Cir.1987) ("We are adjured to take a critical view of an agency's 'post hoc rationalization' ....") (citations omitted).

5. The SBA's memorandum of points and authorities in support of its motion cited three separate reviews of IMS's request by SBA officials. One review was conducted in September 1995 by Betty Perno, the Assistant Director for the 8(a)

district court concluded that the SBA's decision not to revise IMS's program term was not arbitrary and capricious because "their record contains substantial evidence that the SBA fairly considered the IMS allegations and concluded they did not warrant a change in the program date and that affects the use of qualifications to continue in this program." *See* Bench Op.

Because we affirm the district court's ruling that the SBA did not violate 13 C.F.R. § 124.301 (1987) when it admitted IMS's 1987 contract with the VA into the section 8(a) program, IMS's claim that the SBA's actions were arbitrary and capricious necessarily fails since there is no conclusion that the SBA could have reached other than that the expiration date of IMS's section 8(a) program term was correct. The agency's conclusion that there is "no evidence in the file to support the premise that the solicitation was previously published"[6] is entirely consistent with the ground on which we have based our ruling, although admittedly, at the time it made its decision, the agency did not point to the specific publication requirements of 13 C.F.R. § 124.301 (1987) as it later did in its motion to dismiss, or in the alternative, for summary judgment.

## C. The Supplemental Affidavits

IMS submitted four affidavits to the district court in support of its Request for a Temporary Restraining Order and its Motion for Summary Judgment.[7] IMS claimed that the affidavits, while not contained in the agency record, merely elaborated on information that was in the record and should therefore be permitted. The district court granted SBA's motion to strike the affidavits. We affirm the district court's decision.

It is a widely accepted principle of administrative law that the courts base their review of an agency's actions on the materials that were before the agency at the time its decision was made. *See Puerto Rico Higher Educ. Assistance Corp. v. Riley*, 10 F.3d 847, 850–51 (D.C.Cir.1993) ("We base our review of the Department's actions on the materials that were before the Department at the time its decision was made.") (citation omitted); *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C.Cir. 1984) ("If a court is to review an agency's action fairly, it should have before it neither more nor less information than did the agency when it made its decision."). As the Supreme Court noted in 1985, "The task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to

---

program in the Buffalo SBA office. In a memorandum to the District Counsel in that office, she concluded that the documents in the SBA's file showed that the SBA's contract with IMS had been awarded under the 8(a) program and had not been subject to earlier non–8(a) solicitation. She also noted that IMS's claims were supported only by affidavits and that IMS had provided no other documentation to support its claims. A second review was conducted in October 1995 by Mollie Gaughan, the Buffalo District Counsel. In her memorandum to Michael McHale, the Deputy Administrator for the 8(a) program in SBA's Central Office, she indicated that she had found no support for the statements contained in the affidavits submitted by IMS. Rather, she observed that the affidavits were "in direct conflict" with documents contained in the files. Finally, the SBA Central Office reviewed IMS's request and concluded that the SBA's award of the 1987 contract to IMS was consistent with SBA procedures. *See* Defendant's Memorandum of Points and Authorities in Support of Its Motion to Dismiss or, in the Alternative, Cross Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment, at 18–26. It should be noted that Ms. Gaughan's mem-

orandum mentions that the SBA's file did not include a statement from the procuring agency that the proposed procurement had not been offered previously by public solicitation under a small business set aside, as was required by the regulations. However, the memo also indicated that such a statement had been made by an SBA employee and concluded that it was a matter of agency discretion whether the omission of the procuring agency's statement was fatal. *See* Memorandum from Mollie B. Gaughan, District Counsel, to Michael McHale, Deputy Administrator Minority Enterprise Development (Oct. 4, 1995), at 3.

6. *See* Memorandum from Mollie B. Gaughan, District Counsel, to Michael McHale, Deputy Administrator Minority Enterprise Development (Oct. 4, 1995), at 3.

7. The affidavits were: (1) Affidavit of Iqbal M. Singh (Jan. 5, 1996) (with attachments); (2) Supplemental Affidavit of Iqbal M. Singh (Jan. 17, 1996) (with attachments); (3) Affidavit of Janet Kline (with attachment) (Jan. 17, 1996); (4) Statement of Albert Iamicelli, a VA employee familiar with the 1987 contract (Jan. 16, 1996).

the agency decision based on the record the agency presents to the reviewing court." *Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 743–44, 105 S.Ct. 1598, 1607, 84 L.Ed.2d 643 (1985) (citing *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971)); *see also Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973) (per curiam) ("In applying [the arbitrary and capricious] standard, the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."). It is not necessary that the agency hold a formal hearing in compiling its record, for "[t]he APA specifically contemplates judicial review on the basis of the agency record compiled in the course of informal agency action in which a hearing has not occurred." *Florida Power,* 470 U.S. at 744, 105 S.Ct. at 1607.

Both parties agree that the affidavits submitted by IMS were not available to the SBA at the time it made its decision regarding IMS's participation term. IMS claims, however, that the district court should have considered the affidavits as part of the administrative record because they merely elaborated on details already included in the record. In addition, IMS argues that "even if the affidavits constituted extraneous evidence, they still should have been considered by the Court under various exceptions which permit supplementation of the administrative record." Appellant's Brief at 23.

We find no legal support for IMS's assertions. Even if IMS were correct in its claim that information that elaborates on details already in the record could be considered by the court, the affidavits in question could not be considered because they provide significant new information about the circumstances surrounding the 1987 contract that is not available in the administrative record. Moreover, the affidavits do not appear to fall within any of the accepted exceptions to the principle that the court cannot consider information that falls outside the agency record. As the district court concluded, IMS has not demonstrated that the agency failed to examine all relevant factors or to adequately explain its grounds for decision, or that the agency acted in bad faith or engaged in improper behavior in reaching its decision.

This is not a case where the agency failed "to explain administrative action [so] as to frustrate effective judicial review." *Pitts,* 411 U.S. at 142–43, 93 S.Ct. at 1244. Nor has IMS made the "strong showing of bad faith or improper behavior" required to justify supplementing the record. *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 420, 91 S.Ct. 814, 825, 28 L.Ed.2d 136 (1971).

The affidavits contain information that should have been submitted to the agency before this dispute reached the courts. To allow the affidavits to be considered now would be to permit *ex post* supplementation of the record, which is not consistent with the prevailing standards of agency review. *See AT&T Info. Sys. v. General Serv. Admin.,* 810 F.2d 1233, 1236 (D.C.Cir.1987) ("we have repeatedly applied [the rule against supplementing the agency record] to bar introduction of litigation affidavits to supplement the administrative record") (citations omitted); *Walter O. Boswell Mem'l Hosp.,* 749 F.2d at 793 (noting that the court had struck portions of an amicus brief that discussed affidavits not available to the agency at the time of its decision). As this court held in *Walter O. Boswell Memorial Hospital v. Heckler,* if the parties to a case "wish to contest the merits of the case by referring or submitting to the District Court any material that does not appear in the ... administrative record, they may do so only by joint stipulation." *Id.* at 794.

### III. Conclusion

For the foregoing reasons, we hold that IMS has failed to establish that the SBA's acceptance of IMS's 1987 contract with the VA into the section 8(a) program violated federal regulations. We also hold that the district court properly excluded the supplemental affidavits that the appellant filed in support of its claims on the basis that they were not part of the administrative record. The district court's decision granting the SBA's motion for summary judgment is therefore

*Affirmed.*